Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Spencer L. Pfeiff (SBN 343305)
Spencer@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
Dan@ShayLegal.com
**SHAY LEGAL, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOPHIA HARBIST, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNILEVER UNITED STATES, INC. and CONOPCO, INC. d/b/a KENSINGTON & SONS and as successor by merger to KENSINGTON & SONS, LLC,<br><br>Defendants. | Case No.: '26CV5339 RBM SBC<br><br>CLASS ACTION COMPLAINT<br><br>CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750 ET SEQ.;<br><br>UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §17200 ET SEQ.;<br><br>FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE § 17500 ET SEQ.;<br><br>BREACH OF EXPRESS WARRANTY;<br><br>INTENTIONAL MISREPRESENTATION;<br><br>UNJUST ENRICHMENT<br><br>Jury Trial Demanded |

## INTRODUCTION

1. Plaintiff Sophia Harbist ("Plaintiff") brings this class action on behalf of herself, and all similarly situated consumers who purchased Sir Kensington's® Avocado Oil Mayonnaise (the "Product").[1] The claims are against Unilever United States, Inc. and Conopco, Inc. d/b/a Kensington & Sons and as successor by merger to Kensington & Sons, LLC (collectively, "Defendants"). Plaintiff makes the allegations below based on personal knowledge and experiences and investigation conducted by her counsel.

## NATURE OF THE ACTION

2. Defendants label, market, and advertise the Product as "Avocado Oil Mayonnaise" and as made with "100% avocado oil" and declare avocado oil as the first and only oil in the Product's ingredient statement (collectively, the "Avocado Oil Representation"). Unbeknownst to consumers however, the Product is not made with authentic avocado oil. The oil in the Product bears the compositional signature of cheap, refined vegetable and seed oils that avocado oil is supposed to replace—which consumers pay a premium to avoid.

3. In peer-reviewed research published in July 2026 in the journal *Applied Food Research*, food scientists at the University of California, Davis ("UC Davis") extracted and analyzed the oil from commercially processed foods labeled as containing avocado oil as their sole declared oil, including the Product.[2] The researchers assessed each sample's fatty acid and sterol composition against the internationally recognized compositional standards for authentic avocado oil codified in the *Codex Alimentarius*.

---

[1] The Product includes all sizes and package configurations of Sir Kensington's® Avocado Oil Mayonnaise, including the 12-ounce jar, the 12-ounce squeeze bottle, the 24-ounce jar, and the 32-ounce jar, and all substantially similar formulations sold under the Sir Kensington's® Avocado Oil Mayonnaise name.

[2] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389 (the "Study").

4. The UC Davis researchers collected and analyzed two separate production lots of the Product, identified in the product information accompanying the Study as Sample Nos. 63 and 64.[3] Neither lot of the Product was found to be compositionally consistent with authentic avocado oil.

5. The Product's failure was not inevitable. Of the fourteen (14) avocado oil–labeled mayonnaise samples the UC Davis researchers tested, ten (10)—71%—were classified as inconsistent with authentic avocado oil. Four (4) were not—and all four (4) came from a single competitor, which passed testing for both its avocado oil mayonnaise products in both lots.[4]

6. Defendants charge for authenticity. Plaintiff paid $12.79 for a single twelve-ounce jar of the Product—approximately $1.07 per ounce—a multiple of the price of the conventional mayonnaise sold at the same store. Consumers pay that premium for one reason; they believe they are buying mayonnaise made with avocado oil.

7. Had Plaintiff and Class Members known the truth—that Defendants have either substituted or diluted the avocado oil the Product is named for and claims to contain exclusively—they would not have purchased the Product or would have paid substantially less for it.

8. Accordingly, Plaintiff brings claims against Defendants for violations of: (1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (3) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (4) breach of express warranty; (5) breach of the implied warranty of merchantability; (6) intentional misrepresentation; and (7) unjust enrichment.

---

[3] UC Davis, *Brand information in Authenticity of avocado and olive oils used as ingredients in commercially processed foods* ("Studied Products AFRES"), https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551 (last visited Sept. 12, 2026).

[4] Lopez-Alvarez, *et al.*, *supra* note 2, at 4 tbl.1; UC Davis, *supra* note 3 (Sample Nos. 67–70).

///

///

## PARTIES

9. Plaintiff Sophia Harbist is a citizen of California residing in San Diego. On or about September 5, 2026, Plaintiff purchased Defendants' Sir Kensington's Avocado Oil Mayonnaise—a twelve (12) ounce glass jar—for her personal use at the Ralphs grocery store located at 4315 Mission Boulevard, San Diego, California, for $12.79, or approximately $1.07 per ounce, which she paid by debit card. Plaintiff sought out a mayonnaise made with avocado oil because she avoids refined seed oils and prefers avocado oil for its monounsaturated fat content and other qualities, and she chose the Product for that reason. Prior to making her purchase, Plaintiff saw and relied on Defendants' representations—appearing in the Product's name on the front of the package and in the Product's ingredient statement—that the Product is made with avocado oil.

10. Based on these representations, Plaintiff reasonably believed that the oil used to make the Product was avocado oil and did not believe that the Product contained any other oil. Plaintiff relied on these representations when she decided to purchase the Product. Accordingly, these representations were part of the basis of her bargain, in that Plaintiff would not have purchased the Product on the same terms had she known that the representations were untrue. Furthermore, in making her purchase, Plaintiff paid a price premium because of Defendants' false and misleading Avocado Oil Representation. Plaintiff however did not receive the benefit of the bargain, because the oil in the Product is not authentic avocado oil. Had Plaintiff known that Defendants' representations were false and misleading, she would not have purchased the Product or would have paid substantially less for it.

11. Plaintiff remains interested in purchasing mayonnaise and other condiments that are truly made with avocado oil, intends to purchase them in the future, and would

possibly consider purchasing the Product again if Defendants ensured that the Avocado Oil Representation was accurate and truthful. However, she cannot determine the true composition of the oil in the Product absent scientific testing, and she cannot know whether the false labeling and marketing of the Product have been or will be corrected, or whether the Product's formulation or Defendants' oil sourcing may change over time. If Defendants continue to make the Avocado Oil Representation, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendants are required to make the Product's labeling and marketing accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, sourcing, or formulation of edible oils. Neither Plaintiff nor reasonable consumers possess the laboratory capability needed to determine independently whether the oil in a finished food is the oil the label advertises.

12. Defendant Unilever United States, Inc. ("Unilever") is a Delaware corporation with its principal place of business at 111 River Street, Hoboken, New Jersey 07030. Unilever acquired the Sir Kensington's brand in 2017. Unilever, directly and through its subsidiaries, formulates, manufactures, packages, labels, markets, advertises, distributes, and sells the Product throughout California and the United States, including in this District. The official Sir Kensington's website states that it "is directed only to U.S. consumers for products and services of Unilever United States."[5]

13. Defendant Conopco, Inc. ("Conopco") is a New York corporation with its principal place of business at 111 River Street, 8th floor, Hoboken, New Jersey 07030. Conopco is registered and in good standing in California (Entity No. 305849) and its agent for service of process in California is C T Corporation System. Conopco is a wholly owned subsidiary of Unilever, and the Unilever

[5] Sir Kensington's, https://www.sirkensingtons.com/us/en/ (last visited Sept. 12, 2026).

group "conducts its business in the United States primarily through Conopco, Inc."[6]

14. Conopco does business as, and is the entity identified on the Product's label as, "Kensington & Sons" and is the distributor of the Product. The Product's label states: "Distributed by Kensington & Sons, Englewood Cliffs, NJ 07632." Kensington & Sons, LLC was a Delaware limited liability company (Delaware File No. 5070005), formed on November 22, 2011, that marketed and distributed Sir Kensington's® products and that Unilever acquired in 2017. On November 24, 2025, Kensington & Sons, LLC merged into Conopco, with Conopco as the surviving entity. By operation of law, Conopco succeeded to all of the rights, obligations, and liabilities of Kensington & Sons, LLC, including liability for the conduct alleged herein, and Conopco has continued to distribute the Product under the "Kensington & Sons" name identified on the label. See 6 Del. C. § 18-209(g). Conopco is sued individually as the entity doing business as Kensington & Sons and as successor by merger with Kensington & Sons, LLC.

15. Each Defendant participated in, controlled, authorized, ratified, directed, or knowingly benefited from the creation and dissemination of the Avocado Oil Representation, and each is therefore responsible for the conduct alleged herein. Plaintiff reserves the right to amend this Complaint to add any other Unilever affiliate that discovery reveals formulated, manufactured, labeled, distributed, or sold the Product.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action in which the aggregate claims of the proposed Classes exceed $5,000,000, exclusive of interest and costs, there are

[6] Unilever United States, Inc., *Nonconsolidated Financial Statements* (2018), https://www.unilever.com/files/origin/316050c9cd27f5386d20d3c0f3b5064ea8809815.pdf/audited-financial-statements-of-unus-2018.pdf.

more than 100 members of the proposed Classes, and at least one member of the proposed Classes is a citizen of a state different from Defendants. Defendants are citizens of Delaware, New York, and New Jersey. Plaintiff and the members of the California Subclass are citizens of California, and the Nationwide Class includes citizens of every state.

17. This Court has personal jurisdiction over Defendants because Defendants purposefully avail themselves of the California market by manufacturing, marketing, distributing, and selling the Product to California consumers on a continuous and systematic basis, including in this District, and because Plaintiff's claims arise out of and relate to those California contacts.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's and the Class Members' claims took place in this District. Defendants conduct substantial business in this District, the Product is advertised and sold throughout this District, and Plaintiff purchased the Product and was deceived in this District.

## FACTUAL ALLEGATIONS

### A. Consumers Seek Out and Pay a Premium for Avocado Oil

19. Avocado oil is widely regarded as a premium edible oil. In a February 2025 nationwide survey, "[n]early 4 in 10 (38%) rank avocado oil as the healthiest type of fat or oil," ahead of olive oil (29%) and every other fat tested.[7]

20. That perception rests on the oil's composition. Avocado oil is high in monounsaturated fat—"[a]round 70% of the total fat in avocado oil is monounsaturated"—and has a notably high smoke point, which makes it more desirable for high-heat cooking than many alternatives.[8] Peer-reviewed analyses

---

[7] International Food Information Council, *IFIC Spotlight Survey: Americans' Perceptions of Seed Oils* 2 (Feb. 2025), https://ific.org/wp-content/uploads/2025/02/IFIC-2025-Spotlight-Survey-Seed-Oils.pdf.

[8] Julia Zumpano, *Yes, Avocado Oil Is Good for You*, Cleveland Clinic Health Essentials (Dec. 19, 2024), https://health.clevelandclinic.org/is-avocado-oil-good-for-you.

report that avocado oil contains "monounsaturated fatty acids (69.4%) and a lower amount of polyunsaturated and saturated fatty acids."[9]

21. Correspondingly, a substantial and growing segment of consumers is actively avoiding the refined seed and vegetable oils that avocado oil displaces. The same 2025 survey found that "almost 3 in 10 (28%) say they avoid consuming seed oils."[10] A 2025 Purdue University consumer study likewise reported that "20% of Americans are trying to avoid seed oils in cooking, up slightly from 18% a year ago."[11]

22. Manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. As the lead author of the Study observed, "[c]onsumers are increasingly paying a premium for products made with avocado oil or olive oil."[12]

23. The premium is not theoretical, and the Study measured it. Avocado oil–labeled mayonnaise in the Study ranged from $0.30 to $1.63 per ounce, compared with $0.24 to $0.75 per ounce for vegetable oil mayonnaise.[13] Plaintiff paid approximately $1.07 per ounce for the Product—within the upper half of the avocado oil range and well above the vegetable oil range. On the same shelves and in the same online listings, conventional mayonnaise made with other oils sells for a small fraction of that price.

24. Defendants have capitalized on that demand. Defendants named a mayonnaise after avocado oil, declared avocado oil as its first and only oil, tout "100% avocado oil" in their marketing, and charge accordingly—while selling a product whose oil is not compositionally consistent with authentic avocado oil.

---

[9] Mónica Flores et al., *Avocado Oil: Characteristics, Properties, and Applications*, 24 Molecules 2172 (2019), https://doi.org/10.3390/molecules24112172.

[10] IFIC, *supra* note 7, at 2.

[11] Steve Koppes, *Majority of Consumers Perceive Seed Oils as Safe, but Health Concerns Rise*, Purdue Univ. Coll. of Agric. (May 14, 2025), https://ag.purdue.edu/news/2025/05/majority-of-consumers-perceive-seed-oils-as-safe-but-health-concerns-rise.html.

[12] Amy Quinton, *That Avocado Oil Chip You're Eating May Not Be Made With Pure Avocado Oil*, UC Davis (July 15, 2026), https://www.ucdavis.edu/food/news/avocado-oil-chip-youre-eating-may-not-be-made-pure-avocado-oil.

[13] Lopez-Alvarez, *et al.*, *supra* note 2, at 4 tbl.1.

Defendants thereby obtained an unfair competitive advantage over competitors whose avocado oil claims are true, at the expense of unwitting consumers.

**B. Defendants' Representations and Warranties Are False**

25. The Avocado Oil Representation is not a peripheral or fine-print claim. The words "Avocado Oil" are part of the Product's name, and they appear on the front principal display panel of every package of the Product, in large type, directly beneath the Sir Kensington's house mark. Below is an illustrative image of the front of the Product as purchased by Plaintiff:




**Figure 1**

26. Defendants reinforce—and do not qualify—the Avocado Oil Representation on the back of the package. The Product's ingredient statement reads, in its entirety: "Avocado Oil, Certified Humane Cage Free Egg Yolks, Water, Distilled Vinegar, Salt, Lime Juice Concentrate, Citric Acid, Lime Oil." Below is an illustrative image of the back of the Product as purchased by Plaintiff:




**Figure 2**

27. The Product declares exactly one oil—"Avocado Oil." It declares no other oil, no oil blend, and no "and/or" oil statement. Avocado oil is not merely the only oil in the ingredient statement; it is the first-listed ingredient of any kind. Under federal labeling law, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). By Defendants' own ordering, therefore, avocado oil is the predominant ingredient in the Product by weight—which is what a consumer would expect of a mayonnaise, a food that is predominantly oil.

28. The omission of any other oil is meaningful. Defendants know how to disclose a different oil when they use one. Defendants' own Sir Kensington's Classic Mayonnaise is made with sunflower oil, and Defendants say so. A reasonable consumer who reads "Avocado Oil Mayonnaise" on the front of the package and then finds "Avocado Oil"—and only "Avocado Oil"—at the head of the ingredient statement, reasonably believes that the oil in the Product is avocado oil.

29. Defendants repeat the same message, in stronger terms, everywhere they can. Defendants' official web page for the Product states that it is "Paleo and Keto certified, 100% avocado oil, and bright and savory notes for an unexpected AVO-lanche of flavor."[14]

30. On the same page, under the heading "REASONS TO LOVE OUR MAYO," Defendants expressly tie the Product's quality to the quality of its oil: "They just taste better because they're made better. For example, we like to use higher quality oils. . . . Our expeller pressed 100% avocado oil is another great source of monounsaturated fatty acids."[15]

31. Defendants disseminate the same representation through their retail listings. Defendants' Amazon.com listing for the Product is titled "Sir Kensington's Avocado Oil Mayonnaise 12 oz, Sandwich Spread, 1PK," and states that the Product is "made with 100% avocado oil." The same listing tells consumers: "At Sir Kensington's, we make real condiments from ingredients you can pronounce. We strive to source the best ingredients possible. . . . We never use any artificial ingredients, colors, or preservatives because we believe that, if it's not food, it doesn't belong in our food."[16]

32. The Avocado Oil Representation is uniform. Every purchaser of every unit of the Product was exposed to a materially identical avocado oil claim—in the Product's own name on the front of the package, in the ingredient statement on the back, or in Defendants' website and retail listings.

33. The Avocado Oil Representation is not ambiguous. Whether the oil in a food is the oil the label names is an objective, verifiable, and measurable fact about the Product. It is a statement of fact—not puffery, not opinion, and not subject to

---

[14] Sir Kensington's, *Avocado Oil Mayonnaise*, https://www.sirkensingtons.com/us/en/p/avocado-oil-mayonnaise.html (last visited Sept. 12, 2026).

[15] *Id.*

[16] *Sir Kensington's Avocado Oil Mayonnaise 12 oz*, Amazon.com, https://www.amazon.com/dp/B08PN5WLCC (last visited Sept. 12, 2026).

competing reasonable interpretations. "100% avocado oil" is an absolute quantitative claim.

**C. The UC Davis Study Establishes That the Oil in the Product Is Not Authentic Avocado Oil**

34. The Study, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, conducted by researchers at UC Davis, is the first systematic examination of whether avocado oil and olive oil used as ingredients in many commercially processed foods are authentic.[17]

35. The UC Davis researchers selected commercially processed foods in three categories—chips, mayonnaise, and salad dressings—based on "consumer popularity and market availability." Critically, the researchers included only products that "declared a single oil (e.g., avocado oil or olive oil) in the ingredient statement and did not list additional edible oils." The Product satisfied that criterion and was included in the Study.[18]

36. The UC Davis researchers analyzed seventy-four (74) samples labeled as containing avocado oil or olive oil, representing thirty-seven (37) distinct commercial products, each of which was collected in two separate production lots. The Product was among the products tested. In the product information accompanying the Study, Sir Kensington's "Avocado Oil Mayonnaise" is identified as Sample Nos. 63 and 64.[19]

37. Samples were purchased in 2025 and 2026 from online sources and retail stores in California and stored unopened in the laboratory until analysis. Two (2) separate lots of each product were collected and analyzed, and each lot was

[17] Lopez-Alvarez, *et al.*, *supra* note 2, at 1–2.
[18] *Id.* at 2.
[19] UC Davis, *supra* note 3.

analyzed in duplicate. The Product was therefore analyzed in two independent production lots.[20]

38. Researchers measured both the fatty acid profile and the sterol profile of the oil extracted from each sample. They classified samples by comparing the measured fatty acid and sterol profiles against the *Codex Alimentarius* Standard for Named Vegetable Oils (CXS 210-1999) and the Standard for Olive Oils and Olive Pomace Oils (CXS 33-1981), which are "intended to encompass expected natural variability" of fatty acid and sterol compositions in oil.[21]

39. The Product failed in both lots tested. Neither Sample No. 63 nor Sample No. 64 was classified as compositionally consistent with authentic avocado oil.

40. The Product's failure was not universal among its peers, and therefore cannot be attributed to the category, to the testing method, or to the demands of making a mayonnaise. Of the fourteen (14) avocado oil–labeled mayonnaise samples tested, four (4) were classified as consistent with authentic avocado oil—and all four (4) came from a single competing brand, which passed in both of its products and in both lots of each. Ten (10) of the fourteen (14) samples—71%—were classified as inconsistent. Across all avocado oil–labeled products in the Study, "[e]ighty-nine percent of avocado oil–labeled products exhibited compositional patterns inconsistent with authentic avocado oil."[22]

41. The compositional pattern the researchers observed across the inconsistent samples points to what is used in place of avocado oil. "Low levels of palmitic acid (C16:0) and palmitoleic acid (C16:1), together with elevated stearic acid (C18:0), are not characteristic of authentic avocado oil. Rather, this pattern is more consistent with substitution or dilution using vegetable oils." The

---

[20] Lopez-Alvarez, *et al.*, *supra* note 2, at 2.

[21] *Id.*

[22] *Id.* at 1, 3.

researchers found that "[m]ost avocado oil chips and mayonnaise samples . . . fell outside the Codex standard ranges for C16:0, C16:1 and C18:0."[23]

42. The sterol data pointed the same way. "Most samples had campesterol, stigmasterol and Δ7-avenasterol levels outside the Codex standard ranges," and "[e]levated campesterol, stigmasterol and Δ7-avenasterol are consistent with substitution or dilution with vegetable oils."[24]

43. A targeted marker confirmed the conclusion. Cis-vaccenic acid, C18:1 (n-7), is "characteristically elevated in avocado oil relative to most common vegetable oils" and is "a key discriminatory marker for avocado oil authenticity." Oils from samples classified as consistent clustered at 4–6%. "In contrast, inconsistent samples showed substantially lower levels, between 1-2%, aligning with typical vegetable oil profiles." Mean cis-vaccenic acid content "was 5.3 ± 1.0% in consistent samples compared with 1.7 ± 0.5% in inconsistent samples ($p < 0.001$)."[25]

44. Principal component analysis of the fatty acid and sterol profiles "demonstrated clear separation between samples classified as consistent and inconsistent with their labeled oil claims." And the avocado oil–labeled products did not cluster with avocado oil—they clustered with seed oils: "[m]any avocado oil–labeled samples clustered near samples 76-VO (containing canola, corn, soybean, and/or sunflower oil), suggesting that the fatty acid profiles of those products are more consistent with polyunsaturated vegetable oil compositions than with authentic avocado oil."[26]

///

///

---

[23] *Id.* at 4.

[24] *Id.*

[25] *Id.* at 6–7.

[26] *Id.* at 5–6.

45. In short, the oil in the Product is not avocado oil or, at a minimum, is not fully avocado oil. It bears the compositional signature of the cheap refined vegetable and seed oils that avocado oil is supposed to replace.

46. The Study was careful about the limits of its own design, noting that "products were evaluated at a single time point," that "results reflect only the two specific lots analyzed," and that they are "not intended to represent ongoing manufacturing practices or lot-to-lot variability."[27] That caution makes the finding as to this Product more significant, not less. Where the researchers collected two lots of a product and only one failed, they said so expressly, reporting "measurable lot-to-lot variation" for two avocado oil chip products in which "only one lot met the criteria for consistency, whereas the second lot was considered inconsistent."[28] The Product is not such a case. Both independently collected lots of the Product failed. Two independent failures are not consistent with an isolated sourcing error; they are consistent with the oil Defendants use in the Product.

47. Upon information and belief, the Product is manufactured to a single, uniform formulation and specification, from a common oil supply, and is sold under a single ingredient statement declaring avocado oil as its sole oil. Defendants do not disclose on the Product's label, or anywhere else, that the identity, source, or composition of the oil varies from lot to lot, from size to size, or over time, and Defendants have never announced any change in the oil used in the Product. Upon information and belief, the oil in the unit Plaintiff purchased, and in the units purchased by Class Members throughout the Class Period, is the same oil the UC Davis researchers found in Sample Nos. 63 and 64 and is likewise not compositionally consistent with authentic avocado oil. The facts concerning

[27] Lopez-Alvarez, *et al.*, *supra* note 2, at 8.
[28] *Id.* at 3.

Defendants' oil sourcing, specifications, and lot-level testing are within Defendants' exclusive possession and are the proper subject of discovery.

48. Defendants have thus engaged in economic adulteration, misleading consumers into believing they are purchasing a Product made only with high-quality avocado oil. The Avocado Oil Representation is therefore actionable.

**D. The Study's Classification Criteria Were Conservative and Generous to the Products Tested**

49. The Study's classification criteria were deliberately conservative and generous to the products tested. To account for analytical uncertainty, biological variability, and potential processing influences, the researchers tolerated minor deviations: a deviation limited to a single fatty acid or sterol marker, and "not exceeding 10% beyond established compositional limits," was not treated as sufficient to classify a sample as inconsistent, and such samples "were therefore considered consistent."[29]

50. A sample was treated as merely "borderline"—and not inconsistent—where no more than two markers marginally exceeded that same 10% allowance without concordant deviations elsewhere. And when a sample was fully consistent in either fatty acids or sterols and borderline in the other, "it was considered consistent with authentic oil." Only samples with "multiple deviations or patterns inconsistent with authentic reference profiles" were classified as inconsistent.[30]

51. The researchers also selected the most forgiving available benchmark. Because "the origin and varietal composition of avocado oil used as an ingredient in processed foods are not disclosed on product labels," classification was based on the *Codex Alimentarius* standards, which "are intended to encompass expected

---

[29] Lopez-Alvarez, *et al.*, *supra* note 2, at 3.

[30] *Id.*

natural variability" arising from cultivar, geographic origin, maturity, and growing conditions.[31]

52. The Product failed anyway—in both lots.

**E. Emulsification and Processing Do Not Explain the Compositional Inconsistency**

53. The UC Davis researchers anticipated and tested the obvious defense—that the compositional deviations they observed might be an artifact of how a mayonnaise is made rather than evidence of what oil went into it—and refuted it experimentally.[32]

54. The researchers prepared model mayonnaise in the laboratory using a retail avocado oil as a reference oil, whose pre-emulsification fatty acid and sterol profiles fell within the applicable Codex ranges. The model mayonnaise was formulated from whole eggs (18%), vinegar (6%), and oil (76%), emulsified, stored in glass jars at 4°C, and then re-extracted and analyzed—mirroring the commercial process and the refrigerated storage of a retail jar.[33]

55. The results were unambiguous. "Emulsified model mayonnaise prepared with avocado oil showed minimal compositional changes. Absolute differences in fatty acids were ≤0.3%, and sterol shifts were ≤0.5%." And critically for this case: "Clerosterol, a sterol for which many of the avocado-labeled mayonnaise samples showed levels below the Codex limit of 1.0[,] was unaffected by emulsification, indicating the inconsistency was not caused by formulation processing."[34]

56. The key authenticity marker was likewise unmoved. "In both avocado oil and olive oil mayonnaise models, C18:1(n-7) remained unchanged following

[31] *Id.*

[32] *See id.* at 3, 7–8.

[33] *Id.* at 3.

[34] *Id.* at 8.

emulsification and short-term refrigerated storage." The researchers concluded that "typical frying and emulsification conditions do not substantially alter oil authenticity markers," and that "the minor changes observed in the model systems are insufficient to explain the significant compositional deviations detected in the inconsistent products."[35]

57. The magnitude of the deviations found in the Product cannot be explained by emulsification, by storage, by processing, or by natural variation. It is explained by the fact that the Product is not made with authentic avocado oil.

**F. The Avocado Oil Representation Is Material to Consumers**

58. The Avocado Oil Representation is material because it is important to consumers deciding whether to purchase the Product. Defendants' own conduct proves it; Defendants put "Avocado Oil" in the Product's name, on the front of the package, and at the head of the ingredient statement, and they built the Product's marketing around it. Manufacturers reserve the front of the package for the claims they believe will most motivate a purchase.

59. These qualities, among others, motivate consumers to pay a premium for products made with avocado oil over products made with other food oils such as canola, corn, peanut, safflower, soybean, and sunflower oil.

60. Regardless of whether consumers believe that avocado oil is superior to other oils or possesses the qualities described above, whether the oil in a food is the oil the label names—rather than a cheaper substitute—is material to reasonable consumers. Consumers may be allergic to, or have religious, dietary, ethical, or other reasons for not consuming certain oils. Consumers of the Product reasonably expect to know what type of oil they are ingesting.

61. The UC Davis researchers observed the significance of front-of-package oil claims, noting that "consumers may reasonably interpret front-of-package oil

---

[35] *Id.*

claims as signals of meaningful product differentiation" and that because all of the products studied "declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations," "consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims such as 'made with 100% avocado oil' to be the primary lipid source of the product."[36]

62. Defendants do not disclose anywhere on the Product's packaging, or anywhere else, that the oil in the Product is not authentic avocado oil, or that the oil in the Product is blended, diluted, or substituted with cheaper vegetable or seed oils. Thus, consumers reasonably believe that the oil used to make the Product is avocado oil.

63. Consumers purchased, and continue to purchase, the Product in part because the Avocado Oil Representation conveys the unequivocal message that the Product is made with avocado oil. Plaintiff and Class Members would have paid less for the Product, or would not have purchased it at all, if not for the Avocado Oil Representation. Plaintiff and Class Members therefore suffered a financial injury: they paid the price premium the Product commands in the market because of the Avocado Oil Representation.

**G. Defendants' Conduct Violates Federal and California Food Labeling Laws**

64. Congress empowered the U.S. Food and Drug Administration ("FDA") to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. The FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

65. The Product is adulterated. Under 21 U.S.C. § 342(b), a food is deemed adulterated "(1) [i]f any valuable constituent has been in whole or in part omitted

[36] Lopez-Alvarez, *et al.*, *supra* note 2, at 4.

or abstracted therefrom; or (2) if any substance has been substituted wholly or in part therefor; or (3) if damage or inferiority has been concealed in any manner; or (4) if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength, or make it appear better or of greater value than it is." Defendants' substitution or dilution of the avocado oil the Product is named for, with cheaper vegetable or seed oils, violates one or more of these provisions, including § 342(b)(1), (b)(2), and (b)(4). This is the definition of economic adulteration.

66. The Product is misbranded. A food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1). A food is also misbranded "[i]f it is offered for sale under the name of another food." *Id.* § 343(b). In determining whether labeling is misleading, the law requires that account be taken not only of affirmative representations but also of "the extent to which the labeling . . . fails to reveal facts material in the light of such representations." *Id.* § 321(n). Misbranded food may not lawfully be introduced or delivered for introduction into interstate commerce. *Id.* § 331(a).

67. The Product's ingredient statement is false. Federal regulation requires that ingredients "be listed by common or usual name in descending order of predominance by weight." 21 C.F.R. § 101.4(a)(1). The Product's ingredient statement declares "Avocado Oil" and only "Avocado Oil" as its first and only oil. If the oil in the Product is substituted or diluted with other vegetable or seed oils, then the ingredient statement fails to declare an ingredient by its common or usual name and fails to declare ingredients in descending order of predominance by weight.

68. The Product's name is false. The "common or usual name of a food . . . shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients," and "may not be confusingly similar to the name of any other food that is not reasonably

encompassed within the same name." 21 C.F.R. § 102.5(a). "Avocado Oil Mayonnaise" does not accurately identify or describe a mayonnaise made with a blend of, or a substitute for, avocado oil. To the extent § 102.5 is limited to nonstandardized foods, Plaintiff pleads it in the alternative; the same conduct independently renders the Product misbranded under 21 U.S.C. §§ 343(a)(1) and 343(b) and Cal. Health & Safety Code §§ 110660 and 110685.

69. Federal regulation also confirms that an accurate-looking ingredient list does not cure a misleading product name. "Among representations in the labeling of a food which render such food misbranded is a false or misleading representation with respect to another food." 21 C.F.R. § 101.18(a). And labeling may be misleading by reason of "the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all" of its ingredients, "even though the names of all such ingredients are stated elsewhere in the labeling." *Id.* § 101.18(b). Here the defect is more basic still; the Product is named for an oil that the Product does not authentically contain at all.

70. Defendants' manufacturing, marketing, advertising, distribution, and sale of the Product violate California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts the federal food-labeling regulations as California regulations: "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a). The federal food-labeling requirements described above are therefore California law, and Plaintiff seeks to enforce requirements identical to them.

71. Defendants' conduct violates the Sherman Law's adulteration provisions, including:

(a) Section 110585(a) (a food is adulterated if any valuable constituent has been in whole or in part omitted or abstracted therefrom);

(b) Section 110585(b) (a food is adulterated if any substance has been substituted wholly or in part therefor);

(c) Section 110585(c) (a food is adulterated if damage or inferiority has been concealed in any manner);

(d) Section 110585(d) (a food is adulterated if any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight or reduce its quality or strength or make it appear better or of greater value than it is);

(e) Section 110620 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is adulterated);

(f) Section 110625 (making it unlawful for any person to adulterate any food) and;

(g) Section 110630 (making it unlawful for any person to receive in commerce any food that is adulterated or to deliver or proffer for delivery any such food).

72. Defendants' conduct also violates the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110685 (a food is misbranded if it is offered for sale under the name of another food);

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food) and;

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

73. Defendants' conduct further violates the Sherman Law's false-advertising provisions, including:

(a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food) and;

(c) Sections 110398 and 110400 (making it unlawful to advertise adulterated or misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

74. Because the Product bears the Avocado Oil Representation despite containing oil that is not compositionally consistent with authentic avocado oil, the Product is adulterated and misbranded under California law, and Defendants' advertising, distribution, and sale of the Product are unlawful. These Sherman Law violations are independently unlawful under California law and serve as predicate violations under California's Unfair Competition Law, as further alleged below.

75. Plaintiff does not seek to enforce the FDCA directly. Plaintiff seeks relief under independently enforceable state consumer-protection and warranty laws, including Sherman Law provisions that adopt food-labeling requirements identical to federal requirements. The federal provisions identify the standards California has adopted and the conduct that renders the Product adulterated and misbranded under California law. Because Plaintiff's state-law claims are based on the same deceptive labeling that renders the Product misbranded under federal law, there is no conflict between the two regimes and no basis for preemption. The express preemption provision does not reach claims of this character: 21 U.S.C. § 343-1(a) enumerates the subsections of § 343 as to which non-identical state requirements are preempted, and § 343(a) is not among them. To the extent

Plaintiff's claims parallel § 343(b) or touch a food for which a standard of identity has been established, they seek to impose requirements identical to the federal requirements and are therefore not preempted. 21 U.S.C. § 343-1(a)(1), (a)(3).

76. Nor does any product-specific federal determination shield the Product. The labels of conventional foods are not reviewed or approved by the FDA before sale. No federal agency has reviewed the Product's label, approved the Avocado Oil Representation, or determined that the oil in the Product is avocado oil.

**H. Reasonable Consumers Cannot Detect Defendants' Deception**

77. The deception alleged here is undetectable at the point of sale. A consumer standing in the aisle cannot look at a sealed jar of mayonnaise and determine the fatty acid or sterol profile of the oil inside it. The Study required solvent extraction and centrifugal recovery of the fat from the mayonnaise matrix, gas chromatography with flame ionization detection, derivatization, and comparison against Codex reference ranges—performed in a university laboratory, in duplicate, on two production lots.

78. Consumers are not required to conduct independent scientific testing to verify express label claims. Reasonable consumers do not possess specialized knowledge of lipid chemistry. Defendants are responsible for ensuring that their express labeling and marketing claims are truthful and not misleading.

79. Nor can a consumer detect the deception by reading the rest of the package. Reasonable consumers have no reason to look beyond the conspicuous representation on the front of the package that the Product is "Avocado Oil Mayonnaise," and consumers are not expected to look beyond a misleading front-of-package representation to discover that it is false. Here, the back label does not correct the front—it repeats it. The ingredient statement names avocado oil, and only avocado oil, as the Product's oil.

80. In an in-store observational study of 11,781 grocery shoppers in six European countries—the United Kingdom, Sweden, France, Germany, Poland, and

Hungary—62.6% of shoppers were observed looking at the front of the product they bought, while only 7.7% were observed looking at that product elsewhere.[37]

81. In one observational study of 802 supermarket shoppers, the mean time between arriving at and departing from a product-category display was less than twelve seconds.[38]

82. Price offers consumers no protection either. The Study specifically warned that "retail price alone was not a reliable indicator of ingredient authenticity and consumers cannot rely on price alone as an indicator of authenticity."[39] Plaintiff paid a premium price and received an adulterated Product.

83. The practical consequence of Defendants' labeling choices is that a consumer at the point of sale—whether standing in a store reading the front of the jar, the back of the jar, and the ingredient statement, or shopping online and reading Defendants' retail listing, the packaging images in that listing, and Defendants' own website—encounters nothing, anywhere, revealing that the oil in the Product is not authentic avocado oil. The deception cannot be discovered at the point of sale.

## I. Defendants Knew or Should Have Known the Avocado Oil Representation Was False

84. Defendants knew, or should have known, that the Avocado Oil Representation was false, misleading, deceptive, and unlawful when they marketed, advertised, labeled, distributed, and sold the Product. Specifically, Defendants knew that: (a) they named, labeled, and advertised the Product as made with avocado oil and with "100% avocado oil"; (b) avocado oil adulteration is a widespread and well-documented problem in the supply chain from which they source; (c) reasonable

[37] Klaus G. Grunert et al., *Use and Understanding of Nutrition Information on Food Labels in Six European Countries*, 18 J. Pub. Health 261, 266 (2010), https://doi.org/10.1007/s10389-009-0307-0.

[38] Peter R. Dickson & Alan G. Sawyer, *The Price Knowledge and Search of Supermarket Shoppers*, 54 J. Marketing 42, 47 (1990), https://doi.org/10.1177/002224299005400304.

[39] Lopez-Alvarez, *et al.*, *supra* note 2, at 4.

consumers would rely on the Avocado Oil Representation when purchasing; (d) consumers would not receive the represented benefit of the bargain; and (e) the Avocado Oil Representation enabled Defendants to charge a premium.

85. Adulteration of avocado oil has been publicly and repeatedly documented for years. In 2020, UC Davis researchers published the first report on the quality and purity of avocado oil sold in the United States and found that the majority of samples tested were adulterated or of substandard quality; "adulteration with soybean oil at levels near 100% was confirmed in two 'extra virgin' and one 'refined' sample."[40]

86. A follow-up study published in 2023 found that, of thirty-six (36) private-label avocado oil products tested, only 31% were pure avocado oil.[41] The same researchers had by then published the analytical tools for detecting the fraud, including cis-vaccenic acid as a marker of seed oil adulteration in avocado oil.[42]

87. Defendants are sophisticated actors. Unilever is one of the largest consumer packaged goods companies in the world and sells multiple mayonnaise brands in the United States. It sources, formulates, specifies, and markets the Product. Sophisticated food companies are charged with knowledge of the labeling rules that govern the products they sell and of the authenticity risks of the ingredients they select. Defendants should be aware of industry studies and trends, including the well-documented problem of adulteration in the avocado oil supply chain. Thus, Defendants knew or should have known that the Product does not contain authentic avocado oil or is diluted with other cheaper oils.

---

[40] Hilary S. Green & Selina C. Wang, *First Report on Quality and Purity Evaluations of Avocado Oil Sold in the US*, 116 Food Control 107328 (2020), https://doi.org/10.1016/j.foodcont.2020.107328; *see also* Amy Quinton, *Study Finds 82 Percent of Avocado Oil Rancid or Mixed With Other Oils*, UC Davis (June 15, 2020), https://www.ucdavis.edu/food/news/study-finds-82-percent-avocado-oil-rancid-or-mixed-other-oils.

[41] Hilary S. Green & Selina C. Wang, *Purity and Quality of Private Labelled Avocado Oil*, 152 Food Control 109837 (2023); *see also* Tiffany Dobbyn, *Nearly 70% of Private Label Avocado Oil Rancid or Mixed With Other Oils*, UC Davis (May 24, 2023), https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancid-or-mixed-other-oils.

[42] H.S. Green & S.C. Wang, *Cis-Vaccenic Acid: New Marker to Detect Seed Oil Adulteration in Avocado Oil*, 1 Food Chemistry Advances 100107 (2022).

88. Every source of that knowledge predated Plaintiff's purchase. Defendants could have verified the authenticity of the oil they purchased, through the same publicly available analytical methods the UC Davis researchers used, at any time. Defendants, as the formulators, manufacturers, labelers, marketers, and distributors of the Product, controlled, or participated in, making the Avocado Oil Representation. Defendants could have stopped using the Avocado Oil Representation or ensured that it was true. Despite their knowledge that consumers reasonably rely on it, Defendants chose to continue using it, thereby causing consumers to buy or overpay for the Product.

89. Defendants continue to manufacture, market, and sell the Product bearing the same Avocado Oil Representation on its packaging, their website, and their retail listings. Defendants' conduct is knowing, willful, and continuing.

**J. Defendants' Avocado Oil Claims Injured Plaintiff and the Classes**

90. Defendants concealed or failed to disclose material facts about the Product, including: (a) the true composition of the oil used to make the Product; (b) the fact that the oil in the Product is not compositionally consistent with authentic avocado oil; (c) the fact that the avocado oil in the Product has been substituted or diluted with cheaper vegetable or seed oils; (d) the fact that the Product's ingredient statement does not accurately declare the oils the Product contains; and (e) the fact that the Product is adulterated and misbranded under federal and California law when sold bearing the Avocado Oil Representation.

91. As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class Members in that they: (a) paid money for a Product that was not as represented; (b) paid a premium price for a Product that was not as represented; (c) were deprived of the benefit of the bargain because the Product they purchased differed from what Defendants warranted; (d) purchased a Product worth less than represented; (e) did not receive a product that met the

expectations Defendants created; (f) purchased a Product containing oils they did not expect or consent to receive; (g) purchased a Product containing cheaper vegetable or seed oils despite intending to buy a product represented to be made with avocado oil; and (h) purchased an adulterated and misbranded Product that could not lawfully have been sold in California.

92. Accordingly, Plaintiff and the Class Members suffered injury in fact and lost money or property because of Defendants' wrongful conduct.

**K. Delayed Discovery, Tolling, and Estoppel**

93. Any applicable statute of limitations is tolled by the delayed-discovery rule. Plaintiff and the Class Members did not discover, and could not reasonably have discovered, that the oil in the Product is not authentic avocado oil until, at the earliest, publication of the Study in July 2026. As alleged above, the defect is not detectable by reading the package, comparing prices, or any other means available to a consumer at the point of sale; it is detectable only by laboratory analysis of the oil extracted from the finished food, measured against Codex compositional standards. Plaintiff exercised reasonable diligence and had no reason to suspect that a Product named for avocado oil, declaring avocado oil as its only oil, and advertised as "100% avocado oil," was made with something else.

94. Any applicable statute of limitations is also tolled by Defendants' fraudulent concealment. Defendants were in possession of superior and exclusive knowledge concerning the identity, source, and composition of the oil they purchased and used in the Product, and concerning their own specifications, supplier qualifications, and any incoming-ingredient testing. Defendants concealed that information from consumers and affirmatively represented the opposite—on the front of the package, in the ingredient statement, on their website, and in their retail listings. Plaintiff and the Class Members reasonably relied on those representations.

95. Defendants are further estopped from relying on any statute of limitations by virtue of the acts and representations alleged herein.

**L. Plaintiff Lacks an Adequate Remedy at Law**

96. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiff's inability to rely on Defendants' Avocado Oil Representation when deciding whether to purchase the Product in the future. Only injunctive relief requiring Defendants to cease or correct the misleading Avocado Oil Representation—or to ensure that it is true—can address that prospective harm.

97. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiff and Class Members paid and the value of the Product as received, and disgorgement of revenues Defendants unfairly obtained, which are equitable remedies not necessarily coextensive with damages.

98. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL carries a four-year limitations period, Cal. Bus. & Prof. Code § 17208, and courts have applied the same period to the FAL, which may reach purchases not fully remediable under the CLRA or under Plaintiff's fraud claim.

99. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted herein. The FAL and UCL prohibit Defendants' fraudulent marketing scheme. Plaintiff's warranty and common-law claims are more limited, focusing on duties arising from Defendants' representations at the point of purchase. The UCL may also borrow statutory prohibitions—including the Sherman Law—that do not themselves create a private cause of action.

///

///

**M. The Circumstances of Defendants' Misrepresentations**

100. The misrepresentations at issue appear in the Product's name and labeling and in Defendants' own marketing. Each was made by Defendants Unilever United States, Inc. and Conopco, Inc. d/b/a Kensington & Sons and as successor by merger to Kensington & Sons, LLC, which, as alleged above, formulate, manufacture, label, market, distribute, and sell the Product. The statements are that the Product is "Avocado Oil Mayonnaise"; that its ingredients are "Avocado Oil, Certified Humane Cage Free Egg Yolks, Water, Distilled Vinegar, Salt, Lime Juice Concentrate, Citric Acid, Lime Oil"; that it is "100% avocado oil"; and that it is made with "expeller pressed 100% avocado oil." The first two appear on the front principal display panel and the back information panel of every unit of the Product. The third and fourth appear on Defendants' product page at sirkensingtons.com[43] and in Defendants' retail listings, including on Amazon.com[44].

101. Defendants have made these statements continuously throughout the Class Period and continue to make them as of the filing of this Complaint. Plaintiff read the Product's name and ingredient statement on or about September 5, 2026, at the Ralphs grocery store located at 4315 Mission Boulevard, San Diego, California, before purchasing the Product there.

102. The statements are false because the oil in the Product is not compositionally consistent with authentic avocado oil, as established by the peer-reviewed analysis of two independent production lots of the Product described in Sections C through E above. Defendants made the statements by placing "Avocado Oil" in the Product's name, on the front of the package, and at the head of the ingredient statement, and by repeating the claim throughout their website and

---

[43] Sir Kensington's, *supra* note 14.

[44] Amazon.com, *supra* note 16.

retail listings, while disclosing nowhere that the avocado oil in the Product had been substituted or diluted. Defendants did so to induce consumers to purchase the Product and to pay the premium that avocado oil commands over conventional mayonnaise, as alleged in Section A above. Defendants' knowledge is alleged in Section I above, and the resulting injury to Plaintiff and Class Members is alleged in Section J above. These allegations satisfy Federal Rule of Civil Procedure 9(b) to the extent it applies to any claim asserted herein.

## CLASS ALLEGATIONS

103. Plaintiff brings this action on behalf of herself, and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3). As used herein, the "Class Period" means the period from four (4) years prior to the filing of this Complaint through the date of class notice. The proposed classes are defined below (collectively, the "Classes"):

> **Nationwide Class:** All persons who, during the Class Period, purchased the Product in the United States for personal, family, or household purposes and not for resale.
>
> **California Subclass:** All persons who, during the Class Period, purchased the Product in California for personal, family, or household purposes and not for resale. For purposes of this definition, a purchase made online and delivered to an address in California is a purchase in California.

104. As used herein, "Class Members" means the members of the Nationwide Class and the California Subclass.

105. The Classes do not include: (1) Defendants or their officers or directors, (2) the Judge or Magistrate Judge assigned to this action, (3) the assigned Judge's or Magistrate Judge's staff and family, (4) Plaintiff's counsel or Defendants' counsel, (5) any person who purchased the Product for resale, (6) Defendants' parents, subsidiaries, affiliates, officers, directors, employees, and agents, and any entity in which Defendants have a controlling interest, (7) the legal

representatives, heirs, successors, and assigns of any excluded person, (8) any person who timely elects to be excluded and (9) any claim for personal injury, wrongful death, or emotional distress.

106. Plaintiff reserves the right to amend the class definitions and to add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability, including state-specific subclasses. Pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), the above class definitions may be amended or narrowed at any time before final judgment.

107. Choice of law: Plaintiff asserts her claims for breach of express warranty, breach of the implied warranty of merchantability, intentional misrepresentation, and unjust enrichment on behalf of herself and the Nationwide Class, and in the alternative on behalf of the California Subclass. Those claims arise under common-law and Uniform Commercial Code principles that are materially uniform across the states: every state has adopted U.C.C. §§ 2-313 and 2-314 in substantially the form enacted in California at Cal. Com. Code §§ 2313 and 2314, and the elements of intentional misrepresentation and of restitution based on quasi-contract do not differ in any way material to this action, in which a single uniform representation appears on every unit of a single Product. To the extent the Court determines that variations in state law preclude certification of a single nationwide class as to any claim, Plaintiff will seek certification of state or multi-state subclasses grouped by materially similar law, and of the California Subclass. Fed. R. Civ. P. 23(c)(4), (c)(5). Plaintiff asserts her claims under California's Consumers Legal Remedies Act, Unfair Competition Law, and False Advertising Law on behalf of herself and the California Subclass.

108. Ascertainability: The Classes are ascertainable because membership is determined by objective criteria—the purchase of the identified Product, in the United States or in California respectively, during the Class Period. Class Members may be identified through Defendants' records, the records of third-

party retailers and online marketplaces, loyalty and rewards program data, and self-identification by affidavit.

109. Numerosity: While the exact number of members of each Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Nationwide Class number in the millions and members of the California Subclass number at least in the hundreds of thousands. Upon information and belief, Defendants' United States revenues from sales of the Product during the Class Period substantially exceed $5,000,000. The Product is sold at retail nationwide and throughout California, including at Ralphs, Whole Foods Market, and other major grocery chains, and online through Amazon.com and other retailers. Members of the Classes may be notified of the pendency of this action by published and digital notice and, where available, by direct notice using the sales and customer records of Defendants, third-party retailers, and online marketplaces.

110. Existence and Predominance of Common Questions of Law and Fact: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members. These common legal and factual questions include, but are not limited to:

(a) Whether the oil used to make the Product is authentic avocado oil;

(b) Whether the avocado oil in the Product has been substituted or diluted with other oils;

(c) Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the naming, packaging, marketing, distribution, and sale of the Product;

(d) Whether Defendants' use of the Avocado Oil Representation constituted false or deceptive advertising;

///

///

(e) Whether reasonable consumers would understand Defendants' representations and warranties concerning the Product to be untrue and misleading;

(f) Whether Defendants' representations and warranties were material;

(g) Whether the Product is adulterated or misbranded under federal law and the law of the states in which it is sold, including California;

(h) Whether the Product's ingredient statement complies with the ingredient-declaration requirements adopted as California law by Cal. Health & Safety Code § 110100(a);

(i) Whether Defendants engaged in unfair, unlawful, and/or fraudulent business practices;

(j) Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;

(k) Whether the Product commanded a price premium as a result of the Avocado Oil Representation, and if so, in what amount, and whether that premium is measurable on a classwide basis through a common methodology;

(l) Whether Defendants were unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(m) Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendants' actions and the amount of those damages;

(n) Whether Plaintiff and the members of the Classes are entitled to statutory or punitive damages;

(o) Whether Plaintiff and the members of the Classes are entitled to injunctive relief; and

(p) Whether Plaintiff and the members of the Classes are entitled to attorney fees and costs.

///

111. Additional questions of law and fact common to the members of the California Subclass include whether Defendants violated California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq, the Sherman Law, Cal. Health & Safety Code §§ 110585, 110620, 110660, and 110760, and Cal. Com. Code §§ 2313 and 2314.

112. Typicality: The claims of the named Plaintiff are typical of the claims of other members of the Classes because the named Plaintiff was exposed to the Avocado Oil Representation, purchased the Product in reliance on it, and suffered the same economic injury as a result of the same course of conduct—Defendants' uniform naming, labeling, and marketing of the Product. Every unit of the Product sold anywhere in the United States bears a materially identical Avocado Oil Representation and is subject to the same federal labeling standards. Differences between package sizes are limited to volume and are immaterial to the claims alleged.

113. Plaintiff has Article III standing to pursue each claim asserted herein because she purchased the Product in reliance on the Avocado Oil Representation, paid a price premium, and lost money as a result.

114. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative because she has no interests adverse to those of the Classes, is committed to the vigorous prosecution of this action, understands the duties of a class representative, and has retained counsel competent and experienced in complex class action and consumer false-advertising litigation.

115. Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual

litigation make it economically infeasible for members of the Classes to seek redress outside a class action. Plaintiff paid $12.79 for the Product, and the price premium attributable to the Avocado Oil Representation is a fraction of that amount. No Class Member has an interest in individually controlling the prosecution of a separate action. Plaintiff is aware of no litigation commenced by any member of the Classes concerning this controversy against these Defendants. Concentrating the claims in this forum is desirable because the Product is sold under a single uniform label nationwide, because Plaintiff and every member of the California Subclass purchased the Product in California and a substantial number of them in this District, and because Defendants' liability turns on a single course of conduct common to every purchaser. Even if Class Members could afford individual litigation, the resulting burden on the courts would be substantial. Individualized litigation would also create a risk of varying, inconsistent, or contradictory judgments and would magnify delay and expense by requiring multiple trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or all issues presents fewer management difficulties, conserves the resources of the parties and courts, and protects each Class Member's rights. Plaintiff anticipates no difficulty in managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer-protection laws. Separate actions could also subject Defendants to inconsistent obligations.

116. Defendants have acted and refused to act on grounds generally applicable to the Classes by uniformly naming, labeling, marketing, and selling the Product bearing the Avocado Oil Representation. Final injunctive and corresponding declaratory relief is therefore appropriate respecting the Classes as a whole under Federal Rule of Civil Procedure 23(b)(2).

///

///

## CAUSES OF ACTION

## COUNT I

## Violation of California's Consumers Legal Remedies Act

## Cal. Civ. Code § 1750 et seq.

117. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

118. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendants.

119. The Product is a "good" within the meaning of Cal. Civ. Code § 1761(a), Defendants are "persons" within the meaning of § 1761(c), Plaintiff and the California Subclass Members are "consumers" within the meaning of § 1761(d), and Defendants' sale of the Product to them constitutes "transactions" within the meaning of § 1761(e).

120. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

121. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

122. Civil Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

123. Civil Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

124. Defendants violated each of these provisions by (1) naming, labeling, and advertising the Product as "Avocado Oil Mayonnaise" and as made with "100% avocado oil" when the oil in the Product is not compositionally consistent with

authentic avocado oil, (2) declaring avocado oil as the Product's first and only oil when the Product contains other, cheaper oils, (3) failing to disclose that the avocado oil in the Product has been substituted or diluted and (4) selling the Product in a condition in which it is adulterated and misbranded under Cal. Health & Safety Code §§ 110585, 110620, 110660, 110685, and 110760 (which adopt, respectively, the standards of 21 U.S.C. §§ 342(b), 343(a)(1), and 343(b)), and therefore could not lawfully be sold in California.

125. Plaintiff and the California Subclass Members saw, relied on, and reasonably understood the Avocado Oil Representation to mean that the oil used to make the Product is avocado oil. Had they known that Defendants substitute or dilute that oil with cheaper vegetable or seed oils, they would not have purchased the Product or would have paid substantially less for it. Plaintiff and the California Subclass Members therefore suffered damage as a result of Defendants' violations within the meaning of Cal. Civ. Code § 1780(a).

126. Defendants' wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

127. Defendants knew or should have known that the Avocado Oil Representation was false and misleading. Defendants specify the Product's formulation, source its oil, and control its label, and they named the Product after an oil the Product does not authentically contain. Defendants made the Avocado Oil Representation willfully, wantonly, and with reckless disregard for the truth.

128. Concurrently with the filing of this Complaint, counsel for Plaintiff is mailing a pre-suit notice letter pursuant to Cal. Civ. Code § 1782(a) via certified mail, return receipt requested, to Defendants at their principal places of business and to their agents for service of process. The letter identifies the particular CLRA violations alleged, is sent on behalf of Plaintiff and all similarly situated consumers, and demands that Defendants correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices alleged herein. If

Defendants fail to do so within thirty days, Plaintiff will amend this Complaint to seek actual, statutory, and punitive damages under Cal. Civ. Code § 1780(a).

129. Plaintiff and the California Subclass Members currently seek injunctive relief under the CLRA and an award of attorney fees and costs under Cal. Civ. Code § 1780(e) and reserve the right to amend the Complaint to seek any additional relief authorized after expiration of the statutory notice period. Cal. Civ. Code §§ 1780, 1782(d).

**COUNT II**

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200 et seq.**

130. Plaintiff hereby incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

131. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendants.

132. Defendants violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unfair, fraudulent, and unlawful business practices.

133. Plaintiff has standing to pursue this claim because she suffered an injury in fact and lost money or property as a result of Defendants' conduct. Cal. Bus. & Prof. Code § 17204. Plaintiff purchased the Product for personal use, relied on Defendants' representations that it is "Avocado Oil Mayonnaise" made with avocado oil, and paid a price premium and spent money she otherwise would not have spent had she known that the oil in the Product is not authentic avocado oil.

134. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any

established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. California courts apply three tests to the unfair prong in consumer cases: whether the conduct is tethered to a legislatively declared policy; whether the gravity of the harm outweighs the utility of the conduct; and whether the injury is substantial, not outweighed by countervailing benefits to consumers or competition, and not reasonably avoidable. Plaintiff pleads that Defendants' conduct is unfair under each test.

135. Defendants violated the UCL's proscription against engaging in Unlawful Business Practices through their violations of the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; the CLRA, Cal. Civ. Code § 1770 et seq.; the Sherman Law, including, without limitation, Cal. Health & Safety Code §§ 109885, 110100, 110390, 110395, 110398, 110400, 110585, 110620, 110625, 110630, 110660, 110685, 110760, 110765, and 110770. Those California provisions adopt, and are identical to, the federal standards set out at 21 U.S.C. §§ 342(b), 343(a)(1), and 343(b) and 21 C.F.R. §§ 101.4(a)(1), 101.18, and 102.5(a). Plaintiff's UCL claim rests on the California provisions; the federal provisions are identified only because they supply the content California has adopted. Plaintiff asserts no private right of action under the FDCA and seeks to enforce no federal requirement directly.

136. Defendants have also violated the UCL's proscription against engaging in Unfair Business Practices. Defendants' acts, omissions, misrepresentations, practices, and nondisclosures as alleged herein constitute unfair business acts and practices within the meaning of Business & Professions Code § 17200 et seq. Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendants' conduct outweighs any alleged benefits attributable to it. There is no utility in naming a mayonnaise after an oil it does not authentically contain. Furthermore,

Defendants' false and misleading representations are detrimental to competitors who sell avocado oil products whose oil is authentic—including as the Study demonstrates, competitors in the very same product category whose samples passed the same testing that the Product failed. Defendants' misrepresentations and omissions therefore harm consumers and the market as a whole.

137. Defendants have further violated the UCL's proscription against Fraudulent Business Practices. The Avocado Oil Representation is likely to deceive, and did deceive, reasonable consumers, including Plaintiff.

138. Plaintiff and the California Subclass Members suffered substantial injury by virtue of buying the Product that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the oil used to make the Product.

139. The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives in the marketplace. Such conduct is immoral, unethical, or unscrupulous; it offends established public policy and is substantially injurious to Plaintiff and the California Subclass Members.

140. Plaintiff and the California Subclass Members could not have reasonably avoided their injury or known that the Product's name, labeling, and marketing were inaccurate. Consumers lack the laboratory capability to determine the composition of the oil in a sealed jar of mayonnaise, and Defendants' label affirmatively assured them that the oil was avocado oil. As such, they could not have reasonably avoided the injury they suffered. That injury is substantial and is not outweighed by any countervailing benefit to consumers or to competition.

141. Plaintiff lacks an adequate remedy at law for the equitable relief sought under this Count, for the reasons alleged in the paragraphs titled "Plaintiff Lacks an Adequate Remedy at Law" above. Restitution measured by Defendants' revenues from sales of the Product reaches amounts that damages measured by Plaintiff's

price premium would not reach and reaches purchases falling outside the limitations periods governing Plaintiff's other claims. Plaintiff further seeks prospective injunctive relief, which no legal remedy can supply. To the extent the Court determines that Plaintiff has an adequate remedy at law as to any claim for equitable relief, Plaintiff pleads that claim in the alternative pursuant to Federal Rule of Civil Procedure 8(a)(3).

142. Pursuant to California Business and Professions Code § 17203, Plaintiff and the California Subclass Members seek restitution, injunctive relief, and all other relief that the Court deems proper, together with attorney fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT III**

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code § 17500 et seq.**

143. Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

144. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendants.

145. Defendants' acts and practices, as described herein, have deceived or are likely to deceive members of the California Subclass and the public. Defendants name, label, and advertise the Product as "Avocado Oil Mayonnaise" and as made with "100% avocado oil," and declare avocado oil as the Product's first and only oil, even though the oil in the Product is not compositionally consistent with authentic avocado oil, and fail to disclose that the avocado oil has been substituted or diluted with cheaper vegetable or seed oils.

146. Defendants have disseminated uniform advertising regarding the Product throughout California and the United States. The advertising was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers.

///

147. Section 17500 reaches any statement concerning personal property disseminated "in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet." The Product's label and packaging, Defendants' product pages, and the title, description, and package images appearing in the Product's retail listings are each advertising within the meaning of § 17500.

148. In making and disseminating these statements, Defendants knew, or should have known, that their advertising was untrue or misleading. Plaintiff and the California Subclass based their purchasing decisions on Defendants' materially false Avocado Oil Representation and were injured in fact and lost money or property as a result.

149. Plaintiff and the California Subclass Members suffered injury in fact and lost money or property as a result of Defendants' false advertising within the meaning of Cal. Bus. & Prof. Code § 17535. They paid a price premium for a Product that was not as advertised and would not have purchased the Product, or would have paid substantially less, had the truth been disclosed.

150. Defendants' misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

151. Plaintiff lacks an adequate remedy at law for the equitable relief sought under this Count, for the reasons alleged in the paragraphs titled "Plaintiff Lacks an Adequate Remedy at Law" above. Restitution measured by Defendants' revenues from sales of the Product reaches amounts that damages measured by Plaintiff's price premium would not reach and reaches purchases falling outside the limitations periods governing Plaintiff's other claims. Plaintiff further seeks prospective injunctive relief, which no legal remedy can supply. To the extent the Court determines that Plaintiff has an adequate remedy at law as to any claim for

equitable relief, Plaintiff pleads that claim in the alternative pursuant to Fed. R. Civ. P. 8(a)(3).

152. Plaintiff and the California Subclass Members seek restitution, injunctive relief, and all other relief that the Court deems proper, together with attorney fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT IV**

**Breach of Express Warranty**

**Cal. Com. Code § 2313**

153. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

154. Plaintiff brings this claim individually and on behalf of the Nationwide Class and, in the alternative, the California Subclass against Defendants.

155. Every state has enacted Uniform Commercial Code § 2-313 in substantially the form codified in California at Cal. Com. Code § 2313. Plaintiff cites the California provision for convenience; on behalf of the Nationwide Class, Plaintiff asserts this claim under the materially identical express warranty provision of the state in which each Class Member purchased the Product.

156. Defendants are merchants and sellers of the Product within the meaning of Cal. Com. Code §§ 2104 and 2103(1)(d). Under Cal. Com. Code § 2313, any affirmation of fact or promise made by a seller which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise, and any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

157. Defendants' express warranties include the promises, affirmations of fact, and descriptions Defendants made on the Product's packaging and in their marketing that the Product is "Avocado Oil Mayonnaise," that avocado oil is its first and only oil, and that it is made with "100% avocado oil." The Product's name itself is a description of the goods within the meaning of § 2313(1)(b).

158. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Classes, on the one hand, and Defendants, on the other.

159. To the extent vertical privity is required, it is satisfied or excused here. Defendants' express warranties were made directly to consumers through the Product's label, packaging, and online listings, and Plaintiff and the Class Members purchased the Product in reliance on those written representations. Defendants intended that the Avocado Oil Representation reach and be relied upon by retail purchasers, and Plaintiff and the Class Members are the intended beneficiaries of Defendants' warranties.

160. Defendants breached their express warranties by selling a Product whose oil is not compositionally consistent with authentic avocado oil. The Product does not conform to Defendants' Avocado Oil Representation and warranties.

161. Plaintiff provided or is providing Defendants with notice of their breach. Concurrently with the filing of this Complaint, counsel for Plaintiff is mailing notice by certified mail, return receipt requested, to Defendants at their principal places of business and to their agents for service of process, advising Defendants of the breach of express warranty alleged herein on behalf of Plaintiff and all similarly situated purchasers. Cal. Com. Code § 2607(3)(A). Notice is also excused because Defendants had actual knowledge that the Product did not conform to the Avocado Oil Representation, and because Plaintiff did not purchase the Product directly from Defendants.

162. Plaintiff and members of the Classes performed all conditions precedent to Defendants' liability under those warranties when they purchased the Product.

163. Plaintiff and the members of the Classes would not have purchased the Product had they known the Product's true nature.

164. As a result, Defendants breached the express warranties made to the Classes. Plaintiff and all members of the Classes suffered financial injury and are entitled

to damages under Cal. Com. Code § 2714, measured by the difference at the time and place of acceptance between the value of the Product as accepted and the value it would have had if it had conformed to the Avocado Oil Representation, together with incidental and consequential damages under Cal. Com. Code § 2715.

## COUNT V
## Breach of the Implied Warranty of Merchantability
## Cal. Com. Code § 2314

165. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

166. Plaintiff brings this claim individually and on behalf of the Nationwide Class and, in the alternative, the California Subclass against Defendants.

167. Every state has enacted Uniform Commercial Code § 2-314 in substantially the form codified in California at Cal. Com. Code § 2314. Plaintiff cites the California provision for convenience; on behalf of the Nationwide Class, Plaintiff asserts this claim under the materially identical implied warranty provision of the state in which each Class Member purchased the Product.

168. Defendants are merchants with respect to goods of the kind at issue within the meaning of Cal. Com. Code §§ 2104 and 2314(1). Therefore, a warranty of merchantability is implied in every contract for the sale of the Product.

169. Under Cal. Com. Code § 2314(2), goods to be merchantable must be at least such as "(a) [p]ass without objection in the trade under the contract description," and "(f) [c]onform to the promises or affirmations of fact made on the container or label if any."

170. By naming, labeling, and advertising the Product as "Avocado Oil Mayonnaise" and declaring avocado oil as its first and only oil, Defendants made promises and affirmations of fact on the Product's container and label that the oil in the Product is avocado oil.

///

171. The Product does not conform to those promises and affirmations of fact, because the oil in the Product is not compositionally consistent with authentic avocado oil. The Product therefore breaches the implied warranty of merchantability under Cal. Com. Code § 2314(2)(f).

172. The Product also fails to pass without objection in the trade under the contract description within the meaning of Cal. Com. Code § 2314(2)(a). A mayonnaise sold as "Avocado Oil Mayonnaise" that is made with substituted or diluted oil is adulterated and misbranded under federal and California law and cannot lawfully be sold.

173. To the extent vertical privity is required, it is satisfied or excused for the reasons alleged above, including because Defendants made the representations directly to consumers on the Product's label and in their advertising, and because Plaintiff and the Class Members are the intended beneficiaries of those warranties.

174. If Plaintiff and members of the Classes had known that the Product was not made with authentic avocado oil, they would not have been willing to pay the premium price associated with it or would not have purchased it at all. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the Classes have suffered injury and are entitled to damages under Cal. Com. Code §§ 2714 and 2715.

**COUNT VI**

**Intentional Misrepresentation**

175. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

176. Plaintiff brings this claim individually and on behalf of the Nationwide Class and, in the alternative, the California Subclass against Defendants.

177. Defendants named, labeled, marketed, and advertised the Product in a manner indicating that it is made with avocado oil, and exclusively with avocado oil, when it is not. Defendants therefore made misrepresentations about the Product on the Product's packaging, on their website, and their retail listings.

178. The particular misrepresentations, and the who, what, when, where, and how of them, are as follows: (a) who—Defendants Unilever United States, Inc. and Conopco, Inc. d/b/a Kensington & Sons and as successor by merger to Kensington & Sons, LLC, which formulate, label, market, distribute, and sell the Product; (b) what—the statements that the Product is "Avocado Oil Mayonnaise," that its ingredients are "Avocado Oil, Certified Humane Cage Free Egg Yolks, Water, Distilled Vinegar, Salt, Lime Juice Concentrate, Citric Acid, Lime Oil," that it is "100% avocado oil," and that it is made with "expeller pressed 100% avocado oil"; (c) when—continuously throughout the Class Period, including on or about September 5, 2026, when Plaintiff purchased the Product; (d) where—on the front principal display panel and the back information panel of every unit of the Product, on Defendants' product page at sirkensingtons.com, and in Defendants' retail listings including on Amazon.com; and (e) how—the statements are false because the oil in the Product is not compositionally consistent with authentic avocado oil, as established by the peer-reviewed testing of two independent production lots described above.

179. The Avocado Oil Representation is material to a reasonable consumer because it relates to the identity, composition, quality, and healthfulness of the Product, and to the price a consumer will pay for it. A reasonable consumer attaches importance to such representations and is induced to act thereon in making purchasing decisions with respect to the Product.

180. At all relevant times, Defendants knew that the Avocado Oil Representation was false and misleading, or made it recklessly and without regard for its truth. Defendants formulate the Product and source its oil; they are sophisticated participants in a supply chain in which avocado oil adulteration has been publicly and repeatedly documented since at least 2020; and they possess or can readily obtain the analytical means to verify what they are buying and selling. Defendants intend for Plaintiff and other consumers to rely on the Avocado Oil

Representation, as evidenced by Defendants intentionally and conspicuously placing it in the Product's own name, on the front of the package, and at the head of the ingredient statement, and by building the Product's advertising around it. In the alternative, Defendants acted recklessly in making the Avocado Oil Representation without regard to the truth.

181. Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the Product, and had the correct facts been known, would not have purchased it at the price at which it was sold in the market, or would not have purchased it at all.

182. Therefore, as a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Product, and any interest that would have accrued on those monies, all in an amount to be proven at trial. Because Defendants acted with fraud, oppression, or malice, Plaintiff and members of the Classes are also entitled to punitive damages under Cal. Civ. Code § 3294.

**COUNT VII**

**Unjust Enrichment**

183. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

184. Plaintiff brings this claim individually and on behalf of the Nationwide Class and, in the alternative, the California Subclass against Defendants. The principles of restitution and quasi-contract on which this claim rests do not differ among the states in any respect material to this action.

185. To the extent required, Plaintiff asserts this cause of action in the alternative to her legal claims, as permitted by Federal Rule of Civil Procedure 8, and pleads it as a claim for restitution based on quasi-contract.

186. Plaintiff and the Class Members conferred a benefit on Defendants in the form of revenues Defendants derived from their purchases of the Product.

187. Defendants knew of the benefit Plaintiff and the Class Members conferred on them.

188. Defendants have been unjustly enriched by retaining revenues from Plaintiff's and Class Members' purchases. That retention is unjust because Defendants misrepresented that the Product is made with avocado oil, causing purchases that otherwise would not have occurred or would have occurred only at lower prices.

189. Defendants accepted and retained the benefit of revenues derived from sales of the Product to Plaintiff and Class Members.

190. Defendants have thereby profited under circumstances that make it unjust for Defendants to retain the benefit.

191. Plaintiff and Class Members are therefore entitled to restitution of the amounts they paid for the Product or, at minimum, of the price premium attributable to the Avocado Oil Representation.

192. Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendants' conduct.

193. Plaintiff and the Class Members may lack an adequate remedy at law with respect to this claim and seek equitable relief as allowed by law, pleaded in the alternative under Federal Rule of Civil Procedure 8(a)(3).

194. Legal remedies available to Plaintiff and the Class Members are inadequate because they are not as prompt, certain, or efficient as equitable relief. Damages are not as certain as restitution because the standard that governs restitution is different from the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff has failed to adduce sufficient evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Legal claims for damages are not as certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any

potential legal claim cannot serve as an adequate remedy at law. Here specifically, restitution measured by Defendants' revenues from sales of the Product reaches amounts that damages measured by Plaintiff's price premium would not, and it reaches purchases falling outside the limitations periods governing Plaintiff's legal claims. Plaintiff further seeks prospective injunctive relief, which no legal remedy can supply.

195. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchases of the Product are determined to be less than the price premiums she paid. Without compensation for the full price premiums, Plaintiff and the Class Members would be left without the parity in purchasing power to which they are entitled.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants as follows:

a) For an order certifying the Nationwide Class and the California Subclass under Fed. R. Civ. P. 23, naming Plaintiff as representative of the Classes, and naming Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendants' conduct violates each of the statutes referenced herein;

c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, consistent with applicable law and only under causes of action that permit such relief, including such damages as Plaintiff may seek by amendment under Cal. Civ. Code § 1780(a) upon expiration of the notice period provided by Cal. Civ. Code § 1782;

///

e) For interest on all amounts awarded, including under Cal. Civ. Code §§ 3287 and 3288;

f) For an order of restitution, disgorgement, and all other forms of equitable monetary relief;

g) For injunctive relief as pleaded or as the Court may deem proper, including an order prohibiting Defendants from naming, labeling, marketing, or selling the Product with the Avocado Oil Representation unless and until the oil in the Product is in fact avocado oil conforming to the applicable compositional criteria, and requiring Defendants to make affirmative disclosures sufficient to dispel the public misperception created by Defendants' conduct; and

h) For an order awarding Plaintiff's and the Classes' reasonable attorney fees, expenses, and costs of suit, pursuant to Cal. Code Civ. Proc. § 1021.5 and Cal. Civ. Code § 1780(e).

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Date: September 16, 2026

SWIGART LAW GROUP, APC

By: *s/ Spencer L. Pfeiff*
Spencer L. Pfeiff, Esq.
Spencer@SwigartLawGroup.com
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com

Date: September 16, 2026

SHAY LEGAL, APC

By: *s/ Daniel G. Shay*
Daniel G. Shay, Esq.
Dan@ShayLegal.com

*Attorneys for Plaintiff and the Proposed Class*

**CLRA VENUE DECLARATION**

**(Cal. Civ. Code § 1780(d))**

I, Spencer L. Pfeiff, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at Swigart Law Group, APC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Cal. Civ. Code § 1780(d) in that a substantial portion of the transaction alleged in the Complaint occurred in this District. Plaintiff Sophia Harbist purchased the Product at the Ralphs grocery store located at 4315 Mission Boulevard, San Diego, San Diego County, California, and was deceived in this District.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at San Diego, California, on September 16, 2026.

By: *s/ Spencer L. Pfeiff*
Spencer L. Pfeiff, Esq.